CONRAD LOMERSON *vs.* PETER H. HUFFMAN and MAHLON
RISLER.

1. On a *scire facias* against a garnishee under an attachment, to entitle
the plaintiff to recover, he must prove that the garnishee is indebted to the
defendant in attachment.

2. Where an officer has sold property by virtue of an execution, an action
against him for money had and received will not lie, unless it appear that
he has received the money for which the property was sold, or its equivalent.

3. The sale of goods by an officer is not *prima facie* evidence that he re-
ceived the purchase money for them. It may raise the presumption that he
has collected the money, or lost it by neglect, and thereby make him liable
to the plaintiff in execution on an action for negligence ; but even in that
case he may show that the money was not paid to him, but was lost from
from cause which would be a good justification.

4. Liability of an officer for negligence does not create an indebtedness, or
a right or credit liable to be seized under an attachment.

Error to the Supreme Court.

A writ of attachment was issued out of the Hunterdon
County Circuit Court, at the suit of Peter H. Huffman and
Mahlon Risler, against one George Wilkes.

The sheriff returned, that he had attached the said
George Wilkes by money in the hands of Conrad Lomer-
son, due to said Wilkes, and appraised at fifty dollars.

The plaintiffs in attachment caused a writ of *scire facias*
to be issued against Lomerson, as garnishee under the at-
tachment. To this *scire facias* Lomerson pleaded that he
had no goods or chattels, rights or credits, moneys or ef-
fects of George Wilkes, in his custody or possession.

The case was tried in the Hunterdon Circuit, before a
jury, and on the trial the judge charged as follows :

" The question in this case is, had Lomerson, the defend-
ant, at the time of the service of the writ of attachment in
the case of Peter H. Huffman & Co. against George
Wilkes, any money in his hands belonging to Wilkes, ac-
tually or constructively.

The writ was served on the 26th August, 1851, and
judgment entered in April, 1852 ; they are in evidence.

It is also in evidence that several executions, issued out of the court for the trial of small causes, were placed in the hands of Lomerson, the garnishee, who is the defendant here against Wilkes, by virtue of which he levied on and sold certain property belonging to said Wilkes, as per vendue list, &c., on 26th February, 1851.

The proceeds of this sale, as per said list, was $467.17. The amount of the executions was $243.97, which left a balance, including interest, of about $235.74 over and above the amount of the executions.

This makes out the plaintiff's case, and he is entitled to recover, unless the defendant has made out a sufficient defence; for it is not necessary to go further than to show, in the first instance, the sale by the officer, and the amount for which the property was bid off, to charge him with the money. The legal presumption being, in the absence of evidence to the contrary, that he received the money, and that it is in his hands, unless he shows a legal acquittance for it.

The defendant's plea is, that he had no money of Wilkes' in his hands on the 20th August, 1851, or, in other words, that he was not indebted to Wilkes at the time, and under this plea he is entitled to show any matter of law or fact which ought to protect him. Has he done so.

He does not deny that he levied on and sold this property at the time mentioned; nor that he sold it as the property of Wilkes; nor that the excess of amount of sales over the executions in his hands was as heretofore stated. He does not show that any legal notice of claim of property was interposed by any one before or at the time of the sale, or that he was in any way obstructed in the legal execution of the writs under which he acted. He does not show that he paid the amount of the sales over to the execution creditors, or Wilkes, or to anybody else. But he puts his defence upon this, that in point of

fact he never did receive any, or but a very small part of the proceeds of the sale, and he accounts for this in this ray: He shows that a person by the name of Callendar, in the city of New York, had claimed to be the owner of this property, and had sold it to a firm, called Boody, Ross & Co., for $500; that this firm had paid Callendar $200 in cash, and given him their note for $300; and he, Callendar, had commenced a suit against them on this note, in New York, in which the question whether Callendar or Wilkes was the real owner, was to be settled; that an agent or attorney of Boody, Ross & Co., Mr. Trefren, was present at the sale, who was also the attorney of a number of the execution creditors; and that there was a private understanding, between him and the defendant, that Mr. Trefren was to bid off the articles of principal value, as the agent of Boody, Ross & Co. (which he did), and if Callendar should fail in his suit in New York, to show that he, and not Wilkes, was the owner, then the understanding was that the bids were to be considered good, and the money paid; but if Callendar should establish his right to the goods by a recovery in that suit, then the bids were to be considered null and void, and the sale to go for nothing.

Here the defendant stopped; he had ny competent evidence to show how the suit was decided, and we consequently know nothing about it.

Now the question we have to decide is not whether this defence, as it stands, would be good or not in an action by any of the creditors under whose executions the sale was made. As to them, it might be only necessary for Lomerson to show that they were parties to the understanding between Mr. Trefren and the defendant, and that the contingency upon which the sale was to be avoided actually happened; but these creditors are not here.

The plaintiffs, at the time of the constable's sale, as far

as appears, were creditors at large of Wilkes. They had no lien on his property. Lomerson had no claim of theirs in his hands to satisfy. It is not pretended that they had anything to do with the understanding between Mr. Tref- ren and the defendant.

The executions in his, Lomerson's, hands required him to levy on and sell so much of Wilkes' property as would be sufficient to satisfy them, and no more. He was not re- quired to raise any surplus money out of the goods levied on for the benefit of Wilkes' general creditors. But what- ever overplus the sale produced, so far as we have any evi- dence, was the money of Wilkes.

Whatever goods of those levied on, which might not have been sold, would have remained to Wilkes. Lomer- son could have discharged himself, in either case, by show- ing that he paid the surplus realized, or returned the goods not sold to Wilkes or his order, after the executions were satisfied.

The plaintiffs proceed here upon the ground that, inas- much as the evidence shows an excess in the amount of sales beyond the amount of the executions, on the 26th February, 1851, this excess, or surplus, was the proper sub- ject of attachment in Lomerson's hands in August, 1851. This presents the single question, had Lomerson anything of Wilkes' that could be the subject of attachment on the 26th August, 1851.

The writ of attachment commands the sheriff to attach the rights and credits, moneys and effects, goods and chat- tels, lands and tenements, of the debtor, wheresoever they may be found.

Now, was this excess of the sales over the amount of executions, on 26th February, 1851, a debt due Wilkes from Lomerson on 26th August, 1851? There is evidence that in point of fact Lomerson did not receive the money, in consequence of the understanding had with Mr. Tref- ren. But it is not pretended that Mr. Wilkes was a party to this understanding. He was in no way bound by it.

The sale was binding as between Lomerson and Wilkes, and, as between them, Lomerson was bound, having sold this property as Wilkes', to account to Wilkes for the surplus. If he had settled this matter with Wilkes before the plaintiff's, attachment was served he would have a good defence.

As between Lomerson and Wilkes then, he, Lomerson, was liable for this surplus. Being so liable, the plaintiffs', standing in Wilkes' place, having attached his rights and credits in Lomerson's hands, are, I think, entitled to recover it, as a debt due from Lomerson to Wilkes, and not paid over or accounted for.

Lomerson was in possession of this property, as an officer, by virtue of judicial writs in his hands.

His business was to sell the property for as much as he could get for it, and if a surplus was produced by the sale, he is accountable to the creditors in attachment for it. What he sold, and what the purchasers bought, was Wilkes' right in the property sold.

He sold the property as Wilkes'. There was no legal notice of any claim to the property by anybody else. The constable cannot set up that the property was not Wilkes' under the evidence here. That is a question for the purchasers, Boody, Ross & Co., and they must take the risk of it.

The defendant, by his counsel, excepted to all that part of the charge of the court which ruled—

That upon the evidence of the plaintiffs in this case, they are entitled to recover, for it is only necessary for them to show the sale by the defendant, and the amount of the sale, the presumption being that the money was received by the constable, and that the surplus remains in his hands.

That between Lomerson and Wilkes, Lomerson was liable to Wilkes for the surplus money, and being so liable, Wilkes might recover it of him.

That what Lomerson sold, and what the purchasers bought, was only Wilkes' right in the property sold, and in a suit by Wilkes against Lomerson for the surplus, Lomerson could not set up that the property was not Wilkes' property.

And also to all that part of the said charge in which the court instructed the jury, that in this case the plaintiffs were entitled to recover.

The defendant called upon the court to charge the jury—

That upon the attachment of money in the hands of a garnishee, the plaintiffs cannot have execution against the garnishee for a bare right or credit, or for any other chose in action.

That the presumption in law, until the contrary is proved, is, that the constable paid over the surplus money to the defendant in execution, if he had any surplus in his hands after paying the claims of the plaintiffs in execution.

The court having declined so to charge the jury, the defendant excepted, and bills of exceptions were allowed and sealed.

A verdict and judgment were rendered for the plaintiffs (Huffman and Risler) for $272.13 damages.

A writ of error was then brought by Lomerson, the defendant below, removing the case into the Supreme Court.

It was there argued before Justices Potts and Haines, and the judgment of the Circuit Court was affirmed. 4 *Zab.* 674.

A writ of error was then brought, removing the case into this court.

Argued, November term, 1855, by *Ransom*, for plaintiff in error, and *Randolph*, for defendants.

The CHIEF JUSTICE delivered the opinion of the court.

Under an attachment issued against George Wilkes,

the defendant, the sheriff returned that he had attached the defendant by money in the hands of Conrad Lomerson, the plaintiff in error, appraised at $50. A writ of *scire facias* thereon issued against Lomerson, as garnishee in attachment, requiring him to show cause why the plaintiffs in attachment should not have execution of the money so due from Lomerson to Wilkes, according to the statute. The garnishee pleaded to the *scire facias*, as prescribed by the act, that he was not indebted to the defendant in attachment. The simple issue under the pleadings was, whether the garnishee was or was not indebted to the defendant in attachment. To entitle himself to a verdict, the plaintiff in *scire facias* must prove the fact of the indebtedness. In support of the issue, the plaintiff proved that the garnishee, by virtue of sundry executions in his hands as constable, levied upon and sold personal property as the property of Wilkes, the defendant in attachment, to an amount exceeding $460. The sales exceeded the amount due on the executions in the constable's hands, and for this surplus the plaintiff in *scire facias* claimed and obtained a verdict. Of the amount of sales it was proved that $10 was paid to the constable. There was no proof on the part of the plaintiff that any other payment was made to the constable on account of the sales. The plaintiff rested upon the fact, that property levied on as the property of Wilkes had been struck off and sold by the constable, without proving that the price had been paid.

A motion to nonsuit having been refused, the defendant proved that the constable received nothing for a lot of railroad cars, that were struck off for $450. The purchasers never paid anything for them. The court nevertheless charged the jury, that the plaintiffs were entitled to recover the amount of sales, as a debt due from Lomerson to Wilkes, and not paid over or accounted for. The refusal to nonsuit and the charge proceed upon the

assumption that the mere sale of chattels by the constable, as the property of Wilkes, made Lomerson liable for money had and received. In that there is error. It is clear that the attaching creditor can stand in no better position than Wilkes, the defendant in execution; yet even he could not maintain an action for money had and received against Lomerson, without showing that the money had actually been received by him. An action for money had and received will not lie, unless it appear that the defendant has received the money or its equivalent. The sale of goods by an officer raises no legal presumption that the purchase money was actually paid. It may be sufficient to raise the presumption that the money was either collected, or lost by the negligence of the constable, and thus render him *prima facie* liable to the plaintiff in execution for neglect of duty under the statute. But even in such case, it would be competent for the officer to show that in point of fact the money was lost, not by his *laches*, but from some cause which constituted a good justification. 1 *Chit. Pl.* 384.

If Lomerson, through negligence or neglect of duty, had lost the purchase money, he would have been liable to an action for the wrong, or to an action of debt under the statute. *Nix. Dig.* 398, § 39. But he could not have been indebted to Lomerson until he had received the money.

The liability of the constable to Wilkes for neglect of duty, either in the shape of damages at common law or under the statute, did not create an indebtedness, or a right or credit which was liable to be seized or taken under the attachment. *Sergeant on Attachment* 85.

In *Crane* v. *Freese*, 1 *Harr.* 309, it is held, that money actually received by the sheriff for the defendant in attachment may be attached as a right and credit of the defendant. But it has never been held that a claim against an officer for neglect to execute a writ or to collect money

due on execution, or to collect the proceeds of a sale under an execution, constitutes a right or credit which may be seized under an attachment, much less an indebtedness which will sustain an action for money had and received.

The judgment below should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The CHANCELLOR, the CHIEF JUSTICE, Judges OGDEN, ELMER, RYERSON, VREDENBURGH, ARROW-SMITH, CORNELISON, HUYLER, RISLEY, VALENTINE, and WILLS.

CITED in *Davis* v. *Mahany, 9 Vr.* 109.